IN THE UNITED STATES DISTRCIT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PARIS WINTERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 21-cv-04702 |
| v. | ) |
| | ) |
| SOO LINE RAILROAD D/B/A | ) |
| CANADIAN PACIFIC RAILWAY, | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF'S FIRST COMPLAINT

NOW COMES, Plaintiff, Paris Winters, by and through his attorneys, Integrate Legal, P.C., and in complaint of Defendant, Soo Line Railroad d/b/a Canadian Pacific Railway states as follows:

## INTRODUCTION

1. Plaintiff, Paris Winters is an employee of Soo Line Railroad d/b/a Canadian Pacific Railway, and brings this case pursuant to the Civil Rights Act of 1964, 42 § 2000e *et seq*., as amended by the Civil Rights Act of 1991.

## JURISDICTION AND VENUE

2. Plaintiff's claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., as amended by the Civil Rights Act of 1991. Therefore, this Honorable Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(4) and 42 U.S.C. § 2000e-5(f)(3).

3. Venue in the district is proper under 28 U.S.C. § 1391(b). The Defendant resides in the Northern District, Eastern Division, and the events giving rise to Plaintiff's claim occurred here.

4. All conditions precedent to jurisdiction have occurred or been complied with:

    a. Plaintiff, Paris Winters (hereinafter "WINTERS") filed charge No. 2020CA2650 against Defendant, Soo Line Railroad d/b/a Canadian Pacific Railway County (hereinafter "CP") on June 22, 2020, with the Illinois Department of Human Rights, which was cross-filed with the Equal Employment Opportunity Commission, (hereinafter "EEOC"), a copy of which is attached hereto as **Exhibit 1**.

5. The EEOC issued WINTERS a notice of right to sue on charge No.21b-2020-01473, a copy of which is attached hereto as **Exhibit 2**.

## PARTIES

6. Plaintiff, WINTERS, is a citizen of the United States and the State of Illinois and resides in Cook County, Illinois. At all times material to the Complaint WINTERS was employed by Defendant, CP, in Cook County, Illinois.

7. Defendant, CP, at all times relevant to the Complaint, is a corporation registered and domiciled in the State of Illinois, and has been since 1961.

8. At all times material, CP was an employer as defined within the meanings of Title VII.

9. At all times material, CP had a statutory duty to take all reasonable and necessary steps to eliminate discrimination and retaliation from the workplace and to prevent it from happening in the future.

## COMMON FACTUAL ALLEGATIONS

10. On or about August of 1997 WINTERS began his employment with Defendant, CP as a laborer.

11. WINTERS changed departments in 1998 and moved to the Car Department and worked

as a carman for approximately four-years until he was promoted to a lead man at the rip track. Thereafter, WINTERS decided he did not want to be on the rip track and moved back to carman on or about 2002. WINTERS was thereafter promoted to foreman in September 2014.

12. Corey Smith was WINTERS' direct supervisor while WINTERS was a foreman from approximately 2018 to 2020.

13. Smith almost immediately began to harass WINTERS after becoming WINTERS's manager.

14. Beginning on or about September 2018 Smith's harassment escalated and Smith harassed WINTERS, in the following, but not limited to ways:

    a. Continuously accuses WINTERS of being involved in an incident when another employee was found sleeping on the job in September 2018;

    b. Maliciously and without cause instigated disciplinary investigations against WINTERS;

    c. Harasses WINTERS at work, calling him multiple times a shift for no legitimate work related reasoning. On multiple occasions Smith has called WINTERS more than 15-times during a work day for no legitimate work-related reason, but rather to belittle and put WINTERS down. Often times WINTERS would hear laughter in the background when Smith said something particularly belittling to WINTERS or got very loud.

    d. Orders WINTERS to complete tasks which are against the rules of CP;

    e. Orders WINTERS to complete tasks which violate the Union contract;

    f. Orders WINTERS to do something and if it does not work say it was stupid and

      tell others that what WINTERS did was stupid and did not work;

  g. Attempt to coerce WINTERS into working seven days with no overtime pay;

  h. Not allow WINTERS to use motorized vehicles when walking the track even though everyone else was using a motorized vehicle and there were vehicles available.

15. In 2019 WINTERS began to see a doctor on a monthly basis relating to the stress of going to work and being constantly harassed, discriminated against, berated and belittled by Smith.

16. In October 2019 and February, March and April of 2020 WINTERS complained to human resources and management at CP relating to harassment and race discrimination. WINTERS told human resources and management that the harassment and discrimination were affecting him both physically and mentally and he had been to see a doctor on multiple occasions.

17. CP did nothing and the harassment and discrimination only got worse.

18. On March 13, 2020, Smith called WINTERS over fifteen times for no legitimate work-related reason and harassed and belittled WINTERS the entire 12-hour shift.

19. The next day, on March 14, 2020, Smith blamed WINTERS for something that was not WINTERS fault and called WINTERS and very loudly yelled at WINTERS telling WINTERS it was WINTERS' fault and belittling WINTERS. WINTERS began to feel like he would throw-up and his head began to hurt.

20. WINTERS then told Smith that he was ill and needed to go to the doctor. WINTERS advised Smith that he would do his turnover with James Archer. WINTERS completed his turnover and drove directly to the hospital.

21. Upon leaving the hospital WINTERS immediately texted the doctor's note to a supervisor.

22. On March 15, 2020 WINTERS called CP's Human Resources and spoke with Erin. WINTERS told Erin that he was being constantly harassed by and discriminated against by Corey Smith and that WINTERS was forced to leave work and go to the hospital on March 14, 2020 due to the harassment and discrimination. WINTERS told Erin that he had submitted a doctor's note to a manager and asked her to please do something to stop Corey Smith from harassing him.

23. On March 17, 2020 WINTERS received notice that he was being investigated for abandoning his work assignment on March 14, 2020. This accusation is false.

24. In April 2020, WINTERS spoke with Mr. Gibson who was Smith's supervisor and complained that Smith was harassing him. Gibson ignored WINTERS and said that he cannot just fire WINTERS so they were going to discipline WINTERS to get WINTERS disqualified from his position.

25. A disqualification would result in a demotion.

26. On May 11, 2020, a hearing was held relating to the investigation and Mr. Gibson was the hearing officer.

27. On May 21, 2020 WINTERS was given a 20-day suspension and demoted for no legitimate reason.

28. The demotion included a loss of pay.

29. From the commencement of his employment through present, WINTERS consistently performs the duties and responsibilities that meet or exceed the reasonable expectations of CP.

## COUNT I
## <u>AGE DISCRIMINATION</u>

30. WINTERS re-allages paragraphs one through twenty-nine (1-29) above as if fully stated herein.

31. WINTERS's date of birth is October 28, 1965. As such WINTERS is protected by the ADEA 29 USC § 621 et seq.

32. From September 2018 to March 2021, WINTERS was harassed by Corey Smith, his direct supervisor when WINTERS was a foreman and his manager's manager after WINTERS was demoted and until Smith left CP in March of 2021.

33. Similarly situated employees under the age of 40 or significantly younger than WINTERS were not treated in the same manner by Smith.

34. Smith's conduct created a hostile, intimidating, and offensive work environment which interfered with WINTERS's ability to do his job.

35. WINTERS demands a trial by jury.

**WHEREFORE**, WINTERS prays that this Honorable Court grant judgment in his favor and against Defendant, Soo Line Railroad d/b/a Canadian Pacific Railway and this Court grant him the following relief:

A. Enter a declaratory judgment that the practices complained of herein are unlawful and violate the ADEA;

B. Permanently enjoin Soo Line Railroad d/b/a Canadian Pacific Railway, their agents, successors, officers, employees, attorneys, and those acting in concert with them from engaging in each of the unlawful practices, policies, customs, and usages set forth herein, and from continuing any and all practices shown to be in violation of applicable law;

C. Order modifications or elimination Soo Line Railroad d/b/a Canadian Pacific Railway's practices, policies, customs and usages set forth herein and all other such practices shown to be in violation of applicable law so that they will not discriminate or harass on the basis of age;

D. Compensate and make WINTERS whole for all benefits he would have received but for the age discrimination practices of CP;

E. Award WINTERS the costs and disbursements of this action, including reasonable attorney's fees;

F. Award WINTERS punitive damages for Soo Line Railroad d/b/a Canadian Pacific Railway's willful discriminatory conduct; and

G. Grant such other Relief as may be just and proper.

## COUNT II
## HARASSMENT

36. WINTERS reallages paragraphs one through twenty-nine (1-29) above as if fully stated herein.

37. WINTERS is African American. As such WINTERS is a member of a protected class under Title VII of the Civil Rights Act of 1964, as amended by the Equal Opportunity Act of 1972 and the Civil Rights Act of 1991, 42 U.S.C.A. §§2000e to 2000e-17.

38. At all relevant times WINTERS was performing his duties and responsibilities as an employee of CP in a manner that met or exceeded the reasonable expectations of CP.

39. From September 2018 to March 2021, WINTERS was harassed by Corey Smith, his direct supervisor when WINTERS was a foreman and his manager's manager after WINTERS was demoted and until Smith left CP in March 2021.

40. Smith's conduct created a hostile, intimidating, and offensive work environment which interfered with WINTERS's ability to do his job.

41. In September 2018, WINTERS was in the office of the CP and heard managers, including Chris Koutsios, Craig Kuhn and Brandon Billingsly, all Caucasian, discussing WINTERS, James Archer (African American), Ricky Hall (African American), and Kenny Tillman (terminated African American) and laughing about how would you like to have to work under "them" and insinuating that it would be very bad and beneath them to

    have an African American as a supervisor. WINTERS advised them he could hear them and if they had something to say they could say it to him directly.

42. This conduct created a hostile, intimidating, and offensive work environment which interfered with WINTERS's ability to do his job.

43. Similarly situated employees whose race is not African American were not treated in the same manner by Smith or CP.

44. As detailed above WINTERS made numerous complaints to CP's management and human resources Department relating to the harassment and discrimination he received from Smith.

45. CP failed to take any corrective action regarding the above.

46. CP's failure to take corrective action was race discrimination in violation of Title VII of the Civil Rights Act of 1964 as amended.

47. CP's discriminatory actions caused WINTERS to suffer severe humiliation, embarrassment, degradation, physical and emotional distress.

48. As a direct and proximate cause of the intentional and discriminatory acts of CP complained herein, WINTERS suffered and will continue to suffer pecuniary losses, emotional distress, pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses.

49. WINTERS demands a trial by jury.

    **WHEREFORE**, WINTERS prays that this Honorable Court grant judgment in his favor and against Defendant, Soo Line Railroad d/b/a Canadian Pacific Railway and this Court grant him the following relief:

A. Compensate and make WINTERS whole for all benefits he would have received but for the harassment of CP;

B. Award WINTERS the costs and disbursements of this action, including reasonable attorney's fees;

C. Award WINTERS punitive damages for Soo Line Railroad d/b/a Canadian Pacific Railway's willful discriminatory and harassing conduct; and

D. Grant such other Relief as may be just and proper.

## COUNT III
## RACE DISCRIMINATION

50. WINTERS reallages paragraphs one through twenty-nine (1-29) above as if fully stated herein.

51. WINTERS is African American. As such WINTERS is a member of a class protected under Title VII of the Civil Rights Act of 1964, as amended by the Equal Opportunity Act of 1972 and the Civil Rights Act of 1991, 42 U.S.C.A. §§2000e to 2000e-17.

52. At all relevant times WINTERS was performing his duties and responsibilities as an employee of CP in a manner that met or exceeded the reasonable expectations of CP.

53. From September 2018 to March 2021, WINTERS was harassed by Corey Smith, his direct supervisor when WINTERS was a foreman and his manager's manager after WINTERS was demoted, and until Smith left the company in March 2021.

54. Smith's conduct created a hostile, intimidating, and offensive work environment which interfered with WINTERS's ability to do his job.

55. In September 2018, WINTERS was in the office of the CP and heard managers, including Chris Koutsios, Craig Kuhn and Brandon Billingsly, all Caucasian, discussing WINTERS, James Archer (African American), Ricky Hall (African American), and Kenny Tillman (terminated African American) and laughing about how would you like to have to work under "them" and insinuating that it would be very bad and beneath them to have an African American as a supervisor. WINTERS advised them he could hear them and if they had something to say they could say it directly to him.

56. Smith's conduct created a hostile, intimidating, and offensive work environment which interfered with WINTERS's ability to do his job.

57. Similarly situated employees whose race is not African American were not treated in the same manner by Smith or CP.
58. As detailed above WINTERS made numerous complaints to CP's management and human resources Department relating to the harassment and discrimination he received from Smith.
59. CP failed to take any corrective action regarding the above.
60. CP's failure to take corrective action was race discrimination in violation of Title VII of the Civil Rights Act of 1964 as amended.
61. CP's discriminatory actions caused WINTERS to suffer severe humiliation, embarrassment, degradation, physical and emotional distress.
62. As a direct and proximate cause of the intentional and discriminatory acts of CP complained herein, WINTERS suffered and will continue to suffer pecuniary losses, emotional distress, pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses.
63. WINTERS demands a trial by jury.

**WHEREFORE**, WINTERS prays that this Honorable Court grant judgment in his favor and against Defendant, Soo Line Railroad d/b/a Canadian Pacific Railway and this Court grant him the following relief:

A. Enter a declaratory judgment that the practices complained of herein are unlawful and violate the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991;
B. Permanently enjoin Soo Line Railroad d/b/a Canadian Pacific Railway, their agents, successors, officers, employees, attorneys, and those acting in concert with them from engaging in each of the unlawful practices, policies, customs, and usages set forth herein, and from continuing any and all practices shown to be in violation of applicable law;
C. Order modifications or elimination of Soo Line Railroad d/b/a Canadian Pacific Railway's practices, policies, customs and usages set forth herein and all other such

practices shown to be in violation of applicable law so that they will not discriminate or harass on the basis of race;

D. Compensate and make WINTERS whole for all benefits he would have received but for the racially discriminatory practices of CP;

E. Award WINTERS the costs and disbursements of this action, including reasonable attorney's fees;

F. Award WINTERS punitive damages for Soo Line Railroad d/b/a Canadian Pacific Railway's willful discriminatory conduct; and

G. Grant such other Relief as may be just and proper.

## COUNT IV
## RETALIATION

64. WINTERS reallages paragraphs one through twenty-nine (1-29) above as if fully stated herein.

65. Title VII makes it an unlawful employment practice for an employer to retaliate against any employee who opposes or otherwise complains about an unlawful employment practice.

66. At all relevant times WINTERS was performing his duties and responsibilities as an employee of Soo Line Railroad d/b/a Canadian Pacific Railway in a manner that met or exceeded the expectations of CP.

67. In the course of his employment, WINTERS was subjected to harassment and emotional abuse by his supervisor, acting in his capacity as CP's agent.

68. As detailed above WINTERS made numerous complaints to CP's management and human resources Department relating to the harassment and discrimination he received from Smith.

69. CP failed to take any corrective action regarding the above.

70. Instead, CP demoted WINTERS.

71. WINTERS' demotion followed his complaints of discrimination within a short period of time, thereby raising an inference of retaliatory motivation.

72. CP's failure to take corrective action was retaliatory discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended.

73. CP's discriminatory and retaliatory actions caused WINTERS to suffer severe humiliation, embarrassment, degradation and emotional distress.

74. The actions of CP are willful and intentional.

75. As a direct and proximate cause of the intentional and discriminatory acts of CP complained herein, WINTERS suffered and will continue to suffer pecuniary losses, emotional distress, pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses.

76. WINTERS demands a trial by jury.

**WHEREFORE**, WINTERS prays that this Honorable Court grant judgment in his favor and against Defendant, Soo Line Railroad d/b/a Canadian Pacific Railway and this Court grant him the following relief:

A. Enter a declaratory judgment that the practices complained of herein are unlawful and violate the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991;

B. Permanently enjoin Soo Line Railroad d/b/a Canadian Pacific Railway, their agents, successors, officers, employees, attorneys, and those acting in concert with them from engaging in each of the unlawful practices, policies, customs, and usages set forth herein, and from continuing any and all practices shown to be in violation of applicable law;

C. Order modifications or elimination Soo Line Railroad d/b/a Canadian Pacific Railway's practices, policies, customs and usages set forth herein and all other such practices shown to be in violation of applicable law so that they will not retaliate against employees who make complaints of discrimination;

D. Compensate and make WINTERS whole for all benefits he would have received but for the racially discriminatory practices of CP;

E. Award WINTERS the costs and disbursements of this action, including reasonable attorney's fees;

F.  Award WINTERS punitive damages for Soo Line Railroad d/b/a Canadian Pacific Railway's willful discriminatory conduct; and

G.  Grant such other Relief as may be just and proper.

          **Respectfully Submitted,**

          **PARIS WITNERS**

          By: /s// *Cynthia M Rote*

Integrate Legal, P.C.
Cynthia M Rote
516 Main Street, Suite 1
Pecatonica, Illinois 61063
(815) 255-4695
Service@Integrate-Legal.com